RCH:LZ/EWS
F. #2019R00392

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

RICHARD BERNSTEIN,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(18 U.S.C. § 371)

EASTERN DISTRICT OF NEW YORK, SS:

        Erik Saracino, being duly sworn, deposes and states that he is a Special Agent with the National Aeronautics and Space Administration ("NASA"), duly appointed according to law and acting as such.

        In or about and between July 2021 and September 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RICHARD BERNSTEIN, together with others, being an agent of School-1, School-2 and School-3, organizations the identity of which are known to me (the "Schools"), did knowingly and willfully conspire to corruptly solicit and demand for the benefit of BERNSTEIN and Co-Conspirator-1, an individual whose identity is known to me, and accept and agree to accept, one or more things of value, to wit: United States currency, from one or more persons, intending to be influenced and rewarded in connection with business and one or more transactions and series of transactions of the Schools involving things of value of $5,000 or more, while the Schools were in receipt of, in any one year period, benefits in excess of $10,000 under one or more Federal

programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of federal assistance, contrary to Title 18, United States Code, Sections 666(a)(1)(B).

(Title 18, United States Code, Section 371)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with NASA's Office of Inspector General and am currently assigned to the Federal Communications Commission ("FCC") Office of Inspector General on an investigative support detail. I have been involved in the investigation of numerous cases involving financial crimes. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement and officers and investigators involved in the investigation.

I.   The E-Rate and Emergency Connectivity Fund Programs

2. The Universal Service Administrative Company ("USAC") was an independent, not-for-profit corporation created in 1997 to help communities across the country secure access to affordable telecommunications services and internet access. USAC, with oversight from the FCC, operated the E-Rate program, which provided discounts to help eligible schools and libraries in the United States obtain affordable telecommunications and internet access. Eligible participants included public and most non-profit K-12 schools as well as all public and many private libraries.

3. To apply for the E-Rate program, an eligible school or library identified telecommunications and/or internet services it required and submitted a request for competitive

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

bids to USAC. These requests were submitted via FCC Form 470 ("Form 470"). Form 470 required the applicant to, among other things, describe the type and scope of services it was requesting. Form 470 further required an applicant to certify that "all bids will be carefully considered and the bid selected will be for the most cost-effective service or equipment offering, with price being the primary factor, and will be the most cost-effective means of meeting educational needs and technology goals." Form 470 also required an applicant to certify that it had reviewed and complied with "all applicable FCC, state, and local procurement/competitive bidding requirements," and to acknowledge that "willfully making false statements on [the form] may be punished . . . under 18 U.S.C. § 1001." After the Form 470 was submitted, USAC posted it on its website for service providers' consideration.

    4.  After USAC issued funding commitments to eligible schools or libraries, either the service provider or the applicant submitted requests to USAC for reimbursement in the amount of the approved discount. The discount on the provider's service could range from 20% to 90%, with larger discounts for schools or libraries in rural or impoverished areas.

    5.  Title 47, Code of Federal Regulations, Section 54.503(a) provided, in relevant part, that all schools and libraries participating in the E-Rate program must conduct a fair and open competitive bidding process to select a service provider. FCC forms also required both the applicant (i.e., the school or the library) and the service provider to certify that they were in compliance with all applicable FCC regulations, including 47 C.F.R. § 54.503(a).

    6.  FCC Form 473 ("Form 473") required service providers to certify that they were in "compliance with the rules and orders governing the [E-Rate program]," and to acknowledge that "failure to be in compliance and remain in compliance with those rules and orders . . . could result in civil or criminal prosecution by law enforcement authorities." Form

473 also required service providers to "acknowledge that any false statement on [Form 473] . . . can be punished . . . under 18 U.S.C. § 1001[.]"

7. A note to 47 C.F.R. § 54.503(a) provided "an illustrative list of activities or behaviors that would not result in a fair and open competitive process," including where: (i) the applicant for supported services had a relationship with a service provider that would unfairly influence the outcome of a competition or would furnish the service provider with inside information; (ii) someone other than the applicant or an authorized representative of the applicant prepared, signed, and submitted the Form 470 and certification; (iii) a service provider representative was listed as the Form 470 contact person and allowed that service provider to participate in the competitive bidding process; (iv) the service provider prepared the applicant's Form 470 or participated in the bid evaluation or vendor selection process in any way; and (v) the applicant turned over to a service provider the responsibility for ensuring a fair and open competitive bidding process.

8. The FCC's Emergency Connectivity Fund ("ECF") program was a separate program that provided pandemic relief funding to schools and libraries to assist them in supporting remote learning for students, staff and library community members during the COVID-19 pandemic. USAC administered the ECF program on behalf of the FCC.

9. Unlike the E-Rate program, the ECF program did not require a competitive bidding process if that process was not required by state or local laws. ECF applicants selected vendors and filed the FCC Form 471 to seek reimbursement from the program. Form 471 contained various certifications, including a requirement that an applicant certify that the applicant was in compliance with the rules and orders governing the ECF program, that false statements on the form may be punished under 18 U.S.C. § 1001, that the applicant complied with all state and

local laws regarding procurement, and no kickbacks were paid or received by the applicant to anyone in connection with the ECF program. The ECF program also prohibited the payment of gifts related directly or indirectly to ECF program procurement activities or decisions. 47 C.F.R. § 54.1704. This prohibition applied to agents or consultants of school participants. 47 C.F.R. § 54.1704(a)(2)(i).

10. 41 U.S.C. § 8701 defined "kickback" as "any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind that is provided to a prime contractor, prime contractor employee, subcontractor, or subcontractor employee to improperly obtain or reward favorable treatment in connection with a prime contract or a subcontract relating to a prime contract."

11. Unlike the E-Rate program, which required program participants to make a co-payment, the ECF program provided for 100% reimbursement of eligible equipment and service costs.

II.   The Criminal Scheme

12. E-Rate Consulting, LLC ("E-Rate Consulting") and E-Rate Management Solutions Inc. ("EMS"), both located in Woodmere, New York, offered a range of E-Rate and ECF services to schools in New York and elsewhere that have received millions of dollars in benefits through the E-Rate and ECF programs. The defendant RICHARD BERNSTEIN was the founder and Chief Executive Officer of E-Rate Consulting and the president of EMS. BERNSTEIN's adult son, Co-Conspirator-1, was the secretary of EMS and Chief Operating Officer of E-Rate Consulting, according to FCC and USAC records.

13. Based on my training, experience and knowledge of this investigation, and as discussed further below, I believe that the defendant RICHARD BERNSTEIN and

Co-Conspirator-1, while serving as agents of schools seeking benefits under the ECF and E-Rate programs, solicited kickback payments from vendors of those programs. In exchange for such kickback payments, BERNSTEIN and Co-Conspirator-1 agreed to steer the schools to select those vendors, ensuring that the vendors would receive federal funds for the services and equipment they provided to the schools through the ECF program.

14. EMS was a consultant for School-1, which is a school located in Nassau County, New York. On or about February 3, 2022, Co-Conspirator-1 emailed the dean of School-1, copying the defendant RICHARD BERNSTEIN, and attaching a Letter of Agency. The Letter of Agency provided that E-Rate Consulting and its affiliates were "authorized to review, file on line all e-rate forms, respond to requests for information, and provide advice to its understanding of the best practices of the program. . . . E-rate Consulting[]does not and will not represent, promote nor select any vendor, but will review contracts and services to be in accordance with e-rate rules." The Letter of Agency was signed by BERNSTEIN and dated July 21, 2021. The email to which the Letter of Agency was attached provided that School-1 would pay $4,500 to E-Rate Consulting for its services.

15. Despite the terms of the Letter of Agency, the defendant RICHARD BERNSTEIN and Co-Conspirator-1 had already promoted a vendor to School-1. On July 13, 2021, BERNSTEIN sent an email to an employee of School-1 with the text "FYI." Attached to the email was the contact information for Individual-1, the owner and/or operator at Vendor-1, whose identity is known to me.

16. Vendor-1 was identified as the service provider on a funding request submitted on behalf of School-1 for equipment pursuant to the ECF program. The funding request form stated that "Chromebooks will be provided to students and educational staff will receive

Laptops to meet their unmet need to utilize remote learning." One-hundred thirty Lenovo Chromebooks and 40 Lenovo laptops were purchased by Vendor-1 to fulfill this request. An individual identified as Organization-1's dean certified that "no kickbacks . . . were paid or received by the applicant to anyone" in connection with ECF. In response to this funding request, records obtained from USAC show that $68,000 in funding was released by USAC and paid to Vendor-1 by the United States Treasury on or around January 28, 2022.

17. At the same time that the defendant RICHARD BERNSTEIN and Co-Conspirator-1 were acting as agents for School-1, they had agreed to receive kickbacks from Vendor-1, derived from the profits that Vendor-1 would make from providing services to School-1. On February 2, 2022, EMS submitted an invoice to Vendor-1 for $11,500 with the description "Consulting ECF 50%." On that same date, a Vendor-1 employee sent an email to BERNSTEIN, Co-Conspirator-1, and Individual-1. The email stated, "Concerning [School-1], it cost us $45,000 for . . . equipment. [Vendor-1] collected $68,000. Therefore, [Vendor-1] owes you ½ of $23,000, which is $11,500." Vendor-1 issued a payment to EMS for $11,500, which cleared on or about February 8, 2022.

18. I believe the above-described communications and financial transfers show that the defendant RICHARD BERNSTEIN and Co-Conspirator-1 conspired to solicit kickback payments from Vendor-1 in exchange for referring School-1 to Vendor-1 and facilitating the receipt of USAC funds. Vendor-1 provided equipment to School-1, for which the ECF program paid $68,000. Vendor-1 then made a kickback payment to BERNSTEIN and Co-Conspirator-1 of $11,500. RICHARD BERNSTEIN and Co-Conspirator-1 knew that such payments were improper kickback payments that were prohibited by the ECF program.

19. The defendant RICHARD BERNSTEIN and Co-Conspirator-1's arrangement with Vendor-1 went beyond the above-described example. A Letter of Agency dated July 21, 2021 stated that "E-Rate Consulting[] and its affiliates are authorized to review, file on line all e-rate forms, respond to requests for information, and provide advice to its understanding of the best practices of the program. . . . E-Rate Consulting[] et al. does not and will not represent, promote nor select any vendor . . . ." The letter was signed by an authorized representative of School-2, a school located in Astoria, New York, and by BERNSTEIN as president of E-Rate Consulting. I believe this Letter of Agency shows that E-Rate Consulting LLC was acting as an agent of School-2 as of July 21, 2021 and thereafter.

20. On August 4, 2021, Individual-1 sent an email to both the defendant RICHARD BERNSTEIN and Co-Conspirator-1 with the subject, "Where our money comes from." The email stated, in relevant part, as follows:

> Math lesson:
>
> we share $150 for a Chromebook sold. 1000 sold equals 75,000 for you 75,000 for me. We each get a third of the $450 profit per installation for a direct Internet connection which means we will get $150 per unit or per 1000 units we will each make $150,000. Then comes the monthly commission. . . . Application of math lesson: we also have to focus on Internet connection for [School-2]

I believe there is probable cause to believe that this communication shows that BERNSTEIN and Vendor-1 had an illegal kickback arrangement whereby BERNSTEIN and Vendor-1 agreed to split the profits on installations and products that Vendor-1 provided to schools, while BERNSTEIN acted as agent of some of those schools, including School-2.

21. The defendant RICHARD BERNSTEN and Co-Conspirator-1 had similar arrangements with Vendor-2, another vendor whose identity is known to me. Vendor-2, which

was based in Brooklyn, New York, participated in FCC programs, including both E-Rate and ECF, providing equipment and services to dozens of schools across the country.

22. School-3, a school located in Brooklyn, New York, executed an Engagement Letter with EMS, which was signed by Co-Conspirator-1 on December 28, 2021 and an "Authorized Representative" of School-3 on February 16, 2022. Based on this record, there is probable cause to believe that E-Rate Consulting was School-3's agent as of February 16, 2022 and thereafter.

23. On June 15, 2022, Vendor-2's Director of Sales sent an email to the defendant RICHARD BERNSTEIN and Co-Conspirator-1. The email stated, "Our agreement was 5% for the schools we brought to you. We agreed to 10% for ECF round 3 and 50/50 splits if you brought us a school."

24. On July 25, 2022, Co-Conspirator-1 sent an email to an official of School-3, copying the defendant RICHARD BERNSTEIN. The subject of the email was "ECF / Laptops." The email stated, "Just spoke to the vendor. The laptops should arrive by Wednesday-Thursday will send tracking as soon as I have. see attached Invoice." An invoice attached to the email was dated July 25, 2022. The invoice was sent to School-3, and it stated "ECF202113277 [Vendor-2] Lenovo 300E Windows Devices." The quantity listed on the invoice was 300, and the amount listed was $7,500. An affiliate of School-3 paid EMS $7,500 via a check dated August 24, 2022.

25. EMS issued an invoice dated September 21, 2022, to Vendor-2 for $23,670, stating "ECF2190020305 [Vendor-2] $119,700.00 50/50 split of $47,340." The invoice listed the "Quantity" as 300. A USAC spreadsheet identified ECF2190020305 as a funding request associated with School-3. Records obtained from USAC show that a request for payment

associated with Vendor-2 was submitted to USAC on behalf of the beneficiary, School-3, for $119,700. According to records obtained from USAC, the full amount was approved and disbursed by the United States Treasury to Vendor-2 on or around September 7, 2022.

26. In summary, there is probable cause to believe that the defendant RICHARD BERNSTEIN and Co-Conspirator-1 had a kickback arrangement with Vendor-2 similar to their kickback arrangement with Vendor-1. BERNSTEIN and Co-Conspirator-1 agreed to receive payments from Vendor-2 in exchange for steering schools to Vendor-2, including schools for which BERNSTEIN and Co-Conspirator-1 were acting as agents, and facilitating the receipt of USAC funds by Vendor-2. Financial records that I have reviewed show that Vendor-2 sent wires to "Erate Management Corp." totaling more than $200,000, including as recently as August 5, 2024.

WHEREFORE, your deponent respectfully requests that an arrest warrant issues so that the defendant RICHARD BERNSTEIN may be dealt with according to law.

It is further requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and arrest warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation and, based upon my training and experience, I have learned that criminals actively search for criminal affidavits and warrants via the internet, and disseminate them to others as they deem appropriate, <u>e.g.</u>, by posting them publicly online. Premature disclosure of the

11

contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

*ERIK SARACINO*
_____
Erik Saracino
Special Agent, NASA-OIG

Sworn to before me this
10 day of September, 2025

*Seth D. Eichenholtz*
_____
THE HONORABLE SETH D. EICHENHOLTZ
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK